IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TINA BURRIS, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 3:20-cv-01450-JJH |
| | ) | |
| v. | ) | JUDGE JAMES R. KNEPP, II |
| | ) | |
| ETHICON, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT
OF MOTION FOR NEW TRIAL**

Ethicon's argument against a new trial sets higher hurdles than the law would require Plaintiff to clear. The question for now is not whether the Sixth Circuit would find a "clear error in judgment" in the Court's ruling admitting Exhibit 1156 or an abuse of discretion if this Court were to deny Plaintiff's motion for new trial. Rather, the question before this Court is whether, by inducing the Court to admit Exhibit 1156 through the later-recanted testimony of Dr. Sirls, Ethicon caused such prejudice that the Court should exercise its discretion and grant a new trial to ensure the fairness of this proceeding. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1046-47 (6th Cir. 1996) ("[P]rejudice that affects the fairness of a proceeding can certainly be grounds for a new trial."). Ethicon's brief fails to fill the foundational void that should have prevented the jury from ever hearing about Exhibit 1156. Further, Ethicon's "harmlessness" argument lacks force

1

considering Ethicon's heavy emphasis on Exhibit 1156 throughout the trial as a lynchpin of its defense.

Ethicon's argument finds only tenuous support in the record of the trial. According to Ethicon, "Dr. Sirls unequivocally testified that [Exhibit 1156] was among the professional education materials that Ethicon provided at Prolift training sessions and which he himself used as a training resource." (Doc. 259) at 5 (citing Tr. at 1139:6-1140:11); *see also id.* (describing this as "testimony that the [Exhibit 1156] was part of the professional education materials published by Ethicon and made available at its seminars and courses."). But he did not "unequivocally" say any such thing:

> Q. Doctor, I've just handed you what's marked as Exhibit DX 1156. Could you please take a moment to look at it and let me know when you're done.
>
> A. Yes, I'm familiar with this.
>
> Q. How are you familiar with DX 1156?
>
> A. So this would have been the packet that was given to me when I trained in my Prolift cadaver lab.
>
> Q. How do you know that?
>
> A. Well, because it's the type of thing that would have been given in training like that. I have really no other way of getting it. I went to one cadaver lab, and when I came back, I put it on my shelf in my office because I thought it was a good resource.
>
> Q. And were you the one who gave us a copy of that?
>
> A. I believe that I was, yeah.
>
> Q. Why did you say that?
>
> A. Excuse me?
>
> Q. Why did you save the monograph?

> A. I had it as a reference so I could look at it. I thought that it was really informative.
>
> MS. KNUTSON: Your Honor, at this time, defense moves for admission of Exhibit 1156 into evidence.
>
> MS. BOSSIER: Objection, Your Honor. It's hearsay.
>
> MS. KNUTSON: It came from our files, Your Honor. I think we've established that makes it not hearsay.
>
> THE COURT: You got it as part of your training initially -- it's not training to be a trainer but when you were training to be a surgeon performing the Prolift procedure?
>
> THE WITNESS: Yes, sir.

Tr. at 1139:6-1140:11 (emphasis added). The testimony does not establish or even suggest that Exhibit 1159 was distributed at every Prolift training, or at the training Dr. Brown attended in 2005)—only that the witness thought it was the "type" of thing he himself "would" have received at such a training. Later, Dr. Sirls recanted this very testimony and admitted he was wrong, and he did *not*, in fact, receive the Exhibit 1156 when Ethicon trained him to use the Prolift. *See* Tr. 1204:7-20, 1217:24-1218:5. Ethicon laid no foundation, moreover, that Dr. Sirls had personal knowledge of what documents Ethicon's trainers distributed at Ethicon-sponsored seminars other than the ones he himself attended or gave.

Ethicon attempts to fill the void in Dr. Sirls' testimony by resorting to its other expert, Dr. Khandawala, to supply the missing link to the training provided to Plaintiff's treating physician in April 2008 and show that any error in admitting Exhibit 1156 based on Dr. Sirls' testimony would have been harmless. Yet after he gave the testimony Ethicon cites in its response brief, Dr. Khandwala acknowledged that he was not the only trainer conducting Ethicon training seminars and did not know exactly what occurred at seminars given by others, although he believed based

3

on his conversations with other trainers that they presented "similar" information. Tr. at 1505:8-1507:17; see also (Doc. 257-5) (Defense Fact Sheet & training records) at DFS-BURRIS.TINA-0002 & 0093 (failing to identify Dr. Khandwala as a person affiliated with Ethicon who had contact with Dr. Brown or conducted her training in Dayton, Ohio in April 2008). Neither Dr. Sirls nor Dr. Khandwala, in short, had sufficient personal knowledge to identify Exhibit 1156 as a business record of Ethicon or as a document Ms. Burris's treating physician ever received at her training in April 2008.

Ethicon attempts to deflect from the disclosure problems with Dr. Sirls' extensive testimony about Exhibit 1156 by reference to a different document with a different title and different Bates-numbering (which it attaches as Exhibit 1 to its brief)[1]—as well as a brief reference to a "Surgeon's Monograph" in *Dr. Khandwala's* report. Nonetheless, a review of Dr. Sirls' trial testimony alongside his expert reports undermines Ethicon's position that Dr. Sirls properly disclosed the Surgeon's Monograph in Exhibit 1156 as part of the "a complete statement of. . . the basis and reasons for" his opinions about Ethicon's warnings, as Rule 26(a)(2)(B) requires. In his 2017 Report, Dr. Sirls discussed at some length Ethicon's professional trainings and written materials but he did *not* identify the Surgeon's Monograph among his reliance materials. *See* (Doc. 257-3) at 55-57 (discussing "My Training and Experience with Prolift Training" and "The Packaged Kits and Printed Information"); *see also* (Doc. 259) at 4 (explaining timing of Dr. Sirls' disclosure of the Monograph as part of his reliance materials). In 2019, Dr. Sirls' prepared an

---

[1] While Exhibit 1 to Defendant's Response bears an "approval" stamp from 2007, Trial Exhibit 1156 is undated—allowing Dr. Sirls to authenticate the document by mistakenly remembering that he had received Exhibit 1156 at an Ethicon training in 2005.

"addendum" to his 2017 report—which *does not mention* Ethicon's warnings or professional trainings in general or the Surgeon's Monograph specifically. *See generally* (Doc. 257-4). Ethicon now points to a single entry in an updated "Materials List" prepared in conjunction with Dr. Sirls' 2019 Addendum as evidence that Plaintiff should have known that the Surgeon's Monograph supplied a central basis for the warnings-related opinions Dr. Sirls disclosed in 2017. But Rule 26 simply does not contemplate that an opposing party should have to ferret out the basis for an expert's disclosed opinion from a 115-page list of documents prepared and produced—without explanation—years *after* the expert's report on the topic.

As for the effect of the admission of the Exhibit 1156 into evidence, Plaintiff doubts that the parties' arguments could outweigh the Court's own observations of what transpired at trial. Trial courts enjoy wide discretion to order new trials precisely because the courts of appeal recognize they are uniquely positioned to assess the impact of the evidence on the jury. The Court saw and heard the impact of Exhibit 1156 during Ethicon's cross-examination of Dr. Brown, and during Ethicon's extensive examination of its experts and closing arguments emphasizing Exhibit 1156—as well as the jury's specific interest in Exhibit 1156 during deliberations (as evidenced by their fifth written question). There is a substantial likelihood that Ethicon's improper use of the document at trial played a determinative role in the jury's verdict.

For the reasons set forth above, and as argued in her opening brief, Plaintiff therefore respectfully urges that the Court grant her motion and order a new trial on all issues to correct the prejudice caused through the introduction of Exhibit 1156 and to ensure the fairness of this proceeding.

Dated: September 8, 2022            Respectfully submitted,

**MARTIN | BAUGHMAN, PLLC**

*/s/ Ben C. Martin*
Ben C. Martin
TX Bar No. 13052400
Laura J. Baughman TX
Bar No. 00791846
Rachel L. Wright
TX Bar No. 24054255
Joshua V. Michaels
TX Bar No. 24106305
3141 Hood Street, Level 6
Dallas, Texas 75219
P: 214.761.6614
F: 214.744.7590
bmartin@martinbaughman.com
lbaughman@martinbaughman.com
rwright@martinabaugman.com
jmichaels@martinbaughman.com

**ATTORNEYS FOR THE PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Ben C. Martin*
Ben C. Martin